**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| 7E FIT SPA LICENSING GROUP LLC,<br>7E HOLDINGS 1 LLC, and 7E LLC,<br><br>Plaintiffs and Counter-Defendants,<br><br>v.<br><br>7EFS OF HIGHLANDS RANCH, LLC,<br>SPECTRUM MEDSPA, GORDON SMITH, and<br>JANE SMITH,<br><br>Defendants, Counter-Claimants,<br>and Third-Party Plaintiffs,<br><br>v.<br><br>STEVE NIELSEN,<br><br>Third-Party Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)  Case No. 1:15-cv-01109-TWP-MPB<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## ENTRY ON COUNTER-DEFENDANTS' MOTION TO DISMISS
## AND OTHER RELATED MOTIONS

This matter is before the Court on a Motion to Dismiss filed pursuant to Federal Rules of

Civil Procedure 12(b)(6) and 9(b) by Counter-Defendants 7E Fit Spa Licensing Group LLC ("7E

Fit Spa Licensing"), 7E Holdings 1 LLC ("7E Holdings"), and 7E LLC (collectively, "7E Counter-

Defendants"), and Steve Nielsen ("Nielsen") (Filing No. 28).  Also pending before the Court are

two motions related to the Motion to Dismiss: (1) Motion for Leave to File Sur-Reply filed by

Counter-Claimants 7EFS of Highlands Ranch, LLC ("Highlands Ranch"), Spectrum MedSpa

("Spectrum"), Gordon Smith ("Mr. Smith"), and Jane Smith ("Ms. Smith") (collectively,

"Highlands Counter-Claimants") (Filing No. 52), and (2) Motion to Strike Portions of Reply in

Support of Motion for Leave to File Sur-Reply filed by 7E Counter-Defendants and Nielsen (Filing

No. 66).  For the following reasons, the Motion to Dismiss is **granted in part and denied in part**.  Further, the Motion for Leave to File Sur-Reply is **denied**, and the Motion to Strike is **denied**.

## I.   BACKGROUND

The facts in this case are highly disputed. The following facts are not necessarily objectively true, but as required when reviewing a motion to dismiss, the Court accepts as true all factual allegations of the non-moving parties, in this case the Counter-claim and Third-party Complaint, and draws all inferences in favor of Highlands Counter-Claimants.  *See Bielanski v. County of Kane*, 550 F.3d 632, 633 (7th Cir. 2008).

7E LLC is the exclusive owner of multiple trademarks associated with "7E Fit Spa."  7E LLC granted an exclusive license to 7E Fit Spa Licensing to engage in the business of licensing the trademarks for use in connection with its health spa businesses throughout the United States.  7E Holdings is the majority owner and member of Highlands Ranch (Filing No. 23-2 at 2).  7E Fit Spa Licensing and the Highlands Counter-Claimants entered into a licensing agreement on November 1, 2013.[1]  The licensing agreement gave a license to Highlands Ranch to use intellectual property of 7E Fit Spa in its business.  The agreement provided a licensed territory of a four mile radius from a licensed location in Littleton, Colorado.  The agreement contained a non-competition clause and confidentiality and solicitation clauses.  Specifically, the licensing agreement required Highlands Ranch to pay a 6% royalty fee on its gross sales to 7E Fit Spa Licensing.  The licensing agreement also provided a potential franchise opportunity for Highlands Ranch.

---

[1] The parties to the licensing agreement are:  (1) 7E Fit Spa Licensing, signed by managing member Steve Nielsen, and (2) Highlands Ranch, signed by Steve Nielsen and Gordon Smith as "authorized managers," and also signed by Gordon Smith and Jane Smith "individually" and as "signatories on behalf of" Highlands Ranch.  Spectrum MedSpa was not a party to the contract (Filing No. 23-1 at 27).

On October 1, 2013, 7E Holdings and Highlands Ranch entered into an operating agreement under which Highlands Ranch promised to pay $50,000.00 to 7E Holdings.[2]   7E Counter-Defendants assert that this payment has not been paid in full to 7E Holdings; however, Highlands Counter-Claimants deny this allegation.  The operating agreement also contained a non-competition clause and confidentiality and solicitation clauses.   In addition, the operating agreement referred to the potential franchise opportunity.   Both the licensing agreement and operating agreement contained a $50,000.00 liquidated damages clause.

Based on the licensing agreement and operating agreement, Highlands Counter-Claimants began operating a 7E Fit Spa health spa in Littleton, Colorado, in March 2014.  They used certain proprietary equipment and systems in conjunction with the health spa operation.  These proprietary equipment and systems are owned by 7E LLC and were leased to Highlands Ranch and Mr. and Ms. Smith so that they could operate the 7E Fit Spa in Colorado.  7E Counter-Defendants assert that Highlands Counter-Claimants have failed to make timely payments under the equipment lease agreement; however, Highlands Counter-Claimants deny this allegation.

The licensing agreement between 7E Fit Spa Licensing and Highlands Counter-Claimants was terminated, but instead of ceasing operations as required by the licensing and operating agreements, Highlands Counter-Claimants continued operating the health spa using the new name of "Spectrum MedSpa."   They continued using the 7E LLC marks, products, services, and proprietary software in their business operations.   In their Counter-claim and Third-party Complaint, Highlands Counter-Claimants deny that the licensing agreement was terminated, and instead, they allege that the licensing agreement required them to follow certain protocol and

---

[2] The parties to the operating agreement are: (1) 7E Holdings, signed by managing member Steve Nielsen, and (2) Highlands Ranch, signed by Gordon Smith as an "authorized manager," and members Gordon Smith and Jane Smith, and also signed by managers Steve Nielsen and Gordon Smith.   Spectrum MedSpa and Mr. and Ms. Smith, individually, were not parties to this contract (Filing No. 23-2 at 25).

operations directed by 7E Fit Spa corporate office, which was operating out of Carmel, Indiana. One such required protocol was using 7E Fit Spa's proprietary software to record and manage all business operations.  In addition, the 7E Fit Spa corporate office dictated all advertising and procurement activities, product and service offerings, location designs, and employee dress codes.

The Highlands Counter-Claimants allege that between March 2014 and April 2015, the Highlands Ranch health spa in Colorado was visited six times by 7E Fit Spa corporate employees, including Nielsen.  Beginning in late 2014, Ms. Smith received reports from two female employees that Nielsen had harassed them.  After the fall of 2014, the business relationship between the Smiths and Nielsen deteriorated.  Communications from Highlands Ranch would go unanswered, and Nielsen did not inform the Smiths about 7E Fit Spa advertising.

On April 24, 2015, the Smiths discovered that Highlands Ranch had been cut off from any access to the 7E Fit Spa proprietary software, which was necessary to business operations.  They had not been given prior written notice—as required by the licensing agreement—of any violations of the licensing or operating agreements.  They never received any notification that they violated the licensing or operating agreements.  Because they were cut off from the 7E Fit Spa proprietary software, Highlands Counter-Claimants immediately lost revenue and experienced business interruption.  Since April 24, 2015, Highlands Counter-Claimants have not used the 7E Fit Spa marks and name and do not associate themselves with 7E Fit Spa.  The Smiths returned all the equipment leased from 7E LLC to 7E LLC in California.

7E Counter-Defendants assert that Highlands Counter-Claimants interfered with the contractual relationship between 7E Counter-Defendants and 7EFS of Wheathridge LLC, another licensee of the 7E Counter-Defendants in Colorado.  7EFS of Wheathridge LLC's licensing

agreement also has been terminated, and it is operating another health spa under the name "Spectrum MedSpa." However, Highlands Counter-Claimants deny these allegations.

On June 2, 2015, 7E Counter-Defendants filed their Complaint in state court, alleging trademark violations under the Lanham Act (15 U.S.C. §§ 1114(a), 1125(a), 1125(c)), common law trademark infringement, breach of contract, tortious interference, breach of fiduciary duties, and conversion. In their Complaint, they requested declaratory and injunctive relief as well as damages. On July 15, 2015, Highlands Counter-Claimants removed the state court action to this Court. On August 14, 2015, 7E Counter-Defendants filed their Amended Complaint (Filing No. 23). Then on August 28, 2015, Highlands Counter-Claimants filed their Answer, Counter-claim and Third-party Complaint against 7E Counter-Defendants and Nielsen (Filing No. 25). 7E Counter-Defendants and Nielsen filed their Motion to Dismiss on September 8, 2015.

7E Counter-Defendants claim that they have been damaged by Highlands Counter-Claimants' continued unauthorized use of the 7E LLC marks, products, services, and proprietary software in their business operations and by their interference with the relationship between 7E Counter-Defendants and 7EFS of Wheatridge LLC. 7E Counter-Defendants assert eight claims in their Amended Complaint: (1) trademark infringement, (2) unfair competition, (3) civil action under the Indiana Crime Victims Act for conversion, (4) breach of licensing agreement, (5) breach of operating agreement, (6) breach of equipment lease agreement, (7) tortious interference, and (8) breach of fiduciary duties (Filing No. 23).

Highlands Counter-Claimants assert sixteen claims in their Counter-claim and Third-party Complaint: (1) declaratory judgment that Highlands Counter-Claimants have not violated the Lanham Act or other trademark law, (2) declaratory judgment that Highlands Counter-Claimants' health spa operation was a franchise under Indiana law, (3) declaratory judgment that 7E Counter-

Defendants and Nielsen failed to comply with Indiana's franchise laws, (4) equitable relief under the Indiana Franchise Act for fraudulent and deceitful conduct, (5) equitable relief under the Indiana Deceptive Franchise Practices Act, (6) breach of contract, (7) breach of covenant of good faith and fair dealing, (8) breach of implied covenant of good faith and fair dealing, (9) unjust enrichment, (10) promissory estoppel, (11) tortious interference with contract, (12) tortious interference with business relations, (13) breach of fiduciary duty, (14) fraud, (15) fraud in the inducement, and (16) constructive fraud (Filing No. 25).  7E Counter-Defendants and Nielsen moved to dismiss all sixteens claims.

## II.   **LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to move to dismiss a complaint that has failed to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  When deciding a motion to dismiss under Rule 12(b)(6), the Court accepts as true all factual allegations in the complaint and draws all inferences in favor of the non-moving party. *Bielanski*, 550 F.3d at 633.  However, courts "are not obliged to accept as true legal conclusions or unsupported conclusions of fact." *Hickey v. O'Bannon*, 287 F.3d 656, 658 (7th Cir. 2002).

The complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  In *Bell Atlantic Corp. v. Twombly*, the Supreme Court explained that the complaint must allege facts that are "enough to raise a right to relief above the speculative level." 550 U.S. 544, 555 (2007). Although "detailed factual allegations" are not required, mere "labels," "conclusions," or "formulaic recitation[s] of the elements of a cause of action" are insufficient. *Id.*; *see also Bissessur v. Ind. Univ. Bd. of Trs.*, 581 F.3d 599, 603 (7th Cir. 2009) ("it is not enough to give a threadbare recitation of the elements of a claim without factual support").  The allegations must "give the defendant fair notice of what the

. . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555.  Stated differently, the complaint must include "enough facts to state a claim to relief that is plausible on its face." *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009) (citation and quotation marks omitted). To be facially plausible, the complaint must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

> [T]he record under 12(b)(6) is limited to the language of the complaint and to those matters of which the court may take judicial notice.  The complaint cannot be amended by the briefs filed by the plaintiff in opposition to a motion to dismiss. By the same token, the defendant cannot, in presenting its 12(b)(6) challenge, attempt to refute the complaint or to present a different set of allegations.  The attack is on the sufficiency of the complaint, and the defendant cannot set or alter the terms of the dispute, but must demonstrate that the plaintiff's claim, as set forth by the complaint, is without legal consequence.

*Gomez v. Illinois State Bd. of Education*, 811 F.2d 1030, 1039 (7th Cir. 1987) (citation omitted). However, "[courts] consider documents attached to the complaint as part of the complaint itself. Such documents may permit the court to determine that the plaintiff is not entitled to judgment." *Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 764 (7th Cir. 2010) (citations omitted). Additionally, the court may consider documents that are referred to in the complaint and that are concededly authentic and central to the plaintiff's claim. *Santana v. Cook County Bd. of Review*, 679 F.3d 614, 619 (7th Cir. 2012).  When a party attaches exhibits to its complaint and incorporates the exhibits into the pleadings, if there are contradictions between the exhibits and the complaint, the exhibits generally will control.  *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013).

When a claim of fraud is involved, the heightened pleading standard of Federal Rule of Civil Procedure 9(b) applies. Rule 9(b) requires "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."   "On certain subjects understood to raise a high risk of abusive litigation [such as fraud], a plaintiff must state factual

allegations with greater particularity than Rule 8 requires." *Twombly*, 550 U.S. at 569 n.14.  The

"circumstances constituting fraud . . . must be pleaded in detail.  This means the who, what, when,

where, and how" of the alleged fraud must appear in the complaint.  *DiLeo v. Ernst & Young*, 901

F.2d 624, 627 (7th Cir. 1990).

> To meet the particularity requirements of Rule 9(b), a complaint must specify the
> identity of the person making the misrepresentation, the time, place, and content of
> the misrepresentation, and the method by which the misrepresentation was
> communicated to the plaintiff.  A complaint that attributes misrepresentations to all
> defendants, lumped together for pleading purposes, generally is insufficient.

*Sears v. Likens*, 912 F.2d 889, 893 (7th Cir. 1990).

### III.   DISCUSSION

7E Counter-Defendants and Nielsen have moved to dismiss all sixteen claims in Highlands

Counter-Claimants' Counter-claim and Third-party Complaint.  After 7E Counter-Defendants and

Nielsen filed their reply brief in support of their Motion to Dismiss, Highlands Counter-Claimants

filed a Motion for Leave to File a Sur-Reply.  Thereafter, Highlands Counter-Claimants filed their

reply brief in support of their Motion for Leave to File a Sur-Reply, and 7E Counter-Defendants

and Nielsen filed a Motion to Strike Portions of Reply in Support of Motion for Leave to File Sur-

Reply.  The Court will address the three motions in turn.

### A.   Motion to Dismiss

#### 1.   Count 1

7E Counter-Defendants and Nielsen initially argued that dismissal is appropriate because

the Counter-claim and Third-party Complaint was not verified.  They also included Count 1 in

their dismissal argument concerning the Indiana Franchise Act.  Highlands Counter-Claimants

responded that Count 1 is not brought under the Indiana Franchise Act, and their filing was in fact

verified.  In their Reply Brief, 7E Counter-Defendants and Nielsen acknowledge their mistake and

concede that the pleading was verified.  They also concede that Count 1 was not alleged under the

Indiana Franchise Act.  7E Counter-Defendants and Nielsen then argue,

> Nevertheless, Count 1 simply does not state a claim for declaratory relief.  Rather, Count 1 asks the Court to find that Respondents are not liable for trademark infringement; which is not a claim, but rather relief that Respondents could be entitled to should Respondents successfully defend against the trademark infringement complaint asserted in the Complaint.  Count 1, therefore, should be dismissed.

(Filing No. 49 at 7).  This argument does not support an adequate basis to dismiss Count 1 of the

Counter-claim and Third-party Complaint.  7E Counter-Defendants have raised a controversy

regarding various trademark violations against each of the Highlands Counter-Claimants.

Highlands Counter-Claimants have sufficiently pled a plausible claim for declaratory relief

concerning various trademark laws.  Therefore, the Court **DENIES** the Motion to Dismiss as to

**Count 1**.

### 2.       Agreed Dismissal of Certain Claims

After 7E Counter-Defendants and Nielsen filed their Motion to Dismiss, Highlands

Counter-Claimants made numerous concessions regarding their counter-claims and third-party

claims.  They acknowledged that their claims under Counts 2–13 brought by Spectrum against 7E

Counter-Defendants and Nielsen should be dismissed.  This presumably is based on the fact that

the allegations in the pleadings do not show any interaction, contractual or otherwise, between

Spectrum and 7E Counter-Defendants and Nielsen.  While Highlands Counter-Claimants did not

make this same concession for dismissal regarding Counts 14–16, the same lack of allegations of

interactions between Spectrum and 7E Counter-Defendants and Nielsen applies to Counts 14–16.

Therefore, the Court **GRANTS** the Motion to Dismiss as to **Counts 2–16 asserted by Spectrum**

**against 7E Counter-Defendants and Nielsen**.  The dismissal of Spectrum's Counts 2–16 is

without prejudice because it may be possible that the claims may be viable under some set of facts

except to the extent that the claims are dismissed with prejudice as discussed below, in which case, Spectrum's claims also are dismissed with prejudice.

Highlands Counter-Claimants also concede that their claims under Counts 2–16 brought against 7E LLC should be dismissed. Again, this is based on the allegations in the pleadings regarding the interactions among Highlands Ranch, the Smiths, and 7E LLC.  Therefore, the Court **DISMISSES without prejudice Counts 2–16 asserted by Highlands Counter-Claimants against 7E LLC**.  Again, to the extent that these claims are dismissed with prejudice as discussed below, Highlands Counter-Claimants' claims against 7E LLC also are dismissed with prejudice.

Regarding Counts 2–10 and 12, Highlands Counter-Claimants concede that their claims against Nielsen should be dismissed presumably because of the business relationship among the parties and the fact that the licensing and operating agreements were signed by Nielsen in official capacities, not in a personal capacity.  Thus, the Court **DISMISSES without prejudice Counts 2–10 and 12 asserted by Highlands Counter-Claimants against Nielsen**. To the extent that these claims are dismissed with prejudice as discussed below, Highlands Counter-Claimants' claims against Nielsen also are dismissed with prejudice.

Highlands Counter-Claimants concede that their claim under Count 11 brought against 7E Holdings should be dismissed.  This presumably is based on the allegations in the pleadings regarding the business and contractual relationships between Highlands Counter-Claimants and 7E Holdings. Therefore, the Court **DISMISSES without prejudice Count 11 asserted by Highlands Counter-Claimants against 7E Holdings**.  To the extent that this claim is dismissed with prejudice as discussed below, this claim against 7E Holdings also is dismissed with prejudice.

Highlands Counter-Claimants further concede that their claims under Counts 11, 13, and 16 brought against 7E Fit Spa Licensing should be dismissed.  Again, this presumably is based on

the allegations in the pleadings regarding the business and contractual relationships between Highlands Counter-Claimants and 7E Fit Spa Licensing. The Court **DISMISSES without prejudice Counts 11, 13, and 16 asserted by Highlands Counter-Claimants against 7E Fit Spa Licensing**. To the extent that these claims are dismissed with prejudice as discussed below, these claims against 7E Fit Spa Licensing also are dismissed with prejudice.

### 3. <u>Additional Claims to Consider the Propriety of Dismissal</u>

With Count 1 surviving the Motion to Dismiss and with Highlands Counter-Claimants' numerous concessions, the Court is left to consider dismissal of the following claims:

(1) Highlands Ranch's and the Smiths' claims against 7E Fit Spa Licensing under Counts 2–10, 12, 14, and 15.

(2) Highlands Ranch's and the Smiths' claims against 7E Holdings under Counts 2–10 and 12–16.

(3) Highlands Ranch's and the Smiths' claims against Nielsen under Counts 11 and 13–16.

As an initial matter, Highlands Counter-Claimants respond to the Motion to Dismiss, asserting that the Smiths have standing to bring derivative claims under Federal Rule of Civil Procedure 23.1 on behalf of Highlands Ranch under Counts 2–5 (declaratory and equitable relief pursuant to the Indiana Franchise Act and the Indiana Deceptive Franchise Practices Act) and Counts 14–16 (fraud claims). However, the Counter-claim and Third-party Complaint is devoid of allegations that meet the pleading requirements for derivative actions under Rule 23.1(b). Therefore, this argument from Highlands Counter-Claimants does not help them defeat dismissal.

### a. <u>Counts 2–5</u>

7E Counter-Defendants and Nielsen assert that Counts 2–5 brought under the Indiana Franchise Act and the Indiana Deceptive Franchise Practices Act must be dismissed because these

Indiana statutory provisions apply only to franchisees that are Indiana residents or to franchises operated in Indiana. Additionally, they assert that the licensing and operating agreements at issue in this case did not create a franchise.

Responding to this argument, Highlands Counter-Claimants agree that Indiana's two franchise statutory provisions only apply if the franchisee is an Indiana resident or the franchised business will be or is operated in Indiana. However, they assert that Highlands Ranch is an Indiana resident. They further assert that the licensing and operating agreements at issue in this case did in fact create a franchise.

> Under the Indiana Franchise Act and the Indiana Deceptive Franchise Practices Act,
>
> "Franchise" means a contract by which:
> (1) a franchisee is granted the right to engage in the business of dispensing goods or services, under a marketing plan or system prescribed in substantial part by a franchisor;
> (2) the operation of the franchisee's business pursuant to such a plan is substantially associated with the franchisor's trademark, service mark, trade name, logotype, advertising, or other commercial symbol designating the franchisor or its affiliate; and
> (3) the person granted the right to engage in this business is required to pay a franchise fee.

Ind. Code § 23-2.5-1(a); *see also* Ind. Code § 23-2-2.7-5.

If a franchise exists, Indiana's statutory provisions will apply to the franchise if "(a) the offeree or franchisee is an Indiana resident; or (b) the franchised business contemplated by the offer or franchise will be or is operated in Indiana." Ind. Code § 23-2-2.5-2.

> Unless an exemption or exception applies, I.C. 23-2-2.5 and 2.7 govern all agreements . . . which meet the criteria set forth in I.C. 23-2-2.5-1(a) and either involve an Indiana offeree or franchisee or contemplate the operation of a franchise business in the state of Indiana **regardless of the legal terminology in which the transaction is clothed**.

*Continental Basketball Ass'n v. Ellenstein Enters.*, 640 N.E.2d 705, 708 (Ind. Ct. App. 1994) (internal citations omitted) (emphasis added).

12

In their Counter-claim and Third-party Complaint, Highlands Counter-Claimants allege that 7E Fit Spa Licensing granted Highlands Ranch the right to engage in the business of dispensing goods and services under a marketing plan or system prescribed in substantial part by 7E Counter-Defendants and Nielsen. The operation of Highlands Ranch was substantially associated with the 7E Fit Spa trademark, service mark, trade name, logotype, and advertising. Furthermore, Highlands Ranch and the Smiths were required to pay a franchise fee of $30,000.00. Highlands Counter-Claimants' Counter-claim and Third-party Complaint alleges additional facts to support these legal assertions.

For purposes of this Motion to Dismiss, the Court determines that the pleadings support a finding that the licensing agreement and operating agreement meet the criteria established in Indiana Code § 23-2-2.5-1(a) for the existence of a franchise.

Therefore, the Court considers whether the franchisee is an Indiana resident to determine if the Indiana Franchise Act and the Indiana Deceptive Franchise Practices Act apply in this case. The parties have not disputed whether the franchised business will be or is operated in Indiana. The Acts do not define the term "resident."  The licensing agreement was entered into by Highlands Ranch and also Mr. Smith and Ms. Smith "individually" and as "signatories on behalf of" Highlands Ranch (Filing No. 23-1 at 27).  The operating agreement was entered into by Highlands Ranch (Filing No. 23-2 at 25).  Thus, the "franchisee" is Highlands Ranch and arguably Mr. and Ms. Smith.  The Court must determine whether Highlands Ranch and Mr. and Ms. Smith are Indiana residents.

There is no argument that Mr. and Ms. Smith, Colorado citizens, are not Indiana residents. Highlands Counter-Claimants allege in their pleading that the Smiths are citizens of Colorado, and Nielsen also is a citizen of Colorado (Filing No. 25 at 15).  They also allege that Highlands Ranch

is an Indiana limited liability company with its business office in Carmel, Indiana and its operations

in Colorado.  *Id.*  The operating agreement of Highlands Ranch states that the "principal place of

business" or the "principal office" is initially in Carmel, Indiana (Filing No. 25-2 at 1).  The

licensing agreement establishes a licensed territory and licensed location in Littleton, Colorado for

Highlands Ranch's operations (Filing No. 25-1 at 31).  Highlands Ranch's majority owner and

member is 7E Holdings (Filing No. 25-2 at 2), and 7E Holdings' managing member is Nielsen, a

Colorado citizen (Filing No. 25-2 at 25).  The minority members of Highlands Ranch are Mr. and

Ms. Smith, also Colorado citizens (Filing No. 25-2 at 2).

Highlands Counter-Claimants assert that Highlands Ranch is an Indiana resident and point

to *Ind. Dep't of State Revenue v. Mercantile Mortg. Co.* and *Vandevoir v. Southeastern Greyhound

Lines* in support of their argument.  The Indiana Court of Appeals held that "[i]t is well settled that

a corporation is a resident of its state of incorporation . . . [and] the legal existence and the

citizenship of a corporation can only be in the state where it was created, notwithstanding that the

corporation may lawfully do business in other states."  *Ind. Dep't of State Revenue v. Mercantile

Mortg. Co.*, 412 N.E.2d 1252, 1254 (Ind. Ct. App. 1980).  Furthermore, the Seventh Circuit

explained long ago that,

> A corporation can have no legal existence outside of the sovereignty by which it
> was created.  Its places of residence is there, and can be nowhere else.  Unlike a
> natural person, it cannot change its domicile at will, and, although it may be
> permitted to transact business where its charter does not operate, it cannot on that
> account acquire a residence there.

*Vandevoir v. Southeastern Greyhound Lines*, 152 F.2d 150, 152 (7th Cir. 1945).  Based on these

principles concerning the residency of corporations, Highlands Counter-Claimants argue that

Highlands Ranch is an Indiana resident because it is an Indiana limited liability company organized

under the laws of Indiana with a principal place of business, principal office, and registered office in Indiana.

7E Counter-Defendants and Nielsen respond that the entirely different statutory scheme and different case law dealing with corporations do not apply to limited liability companies. They further assert that there is no legal support for the proposition that a legal entity owned by non-Indiana residents and operated outside the State of Indiana can be considered an Indiana "resident" for purposes of the Indiana Franchise Act.

After considering the parties' arguments and reviewing the limited case law that is not directly on point, the Court determines that Highlands Ranch is not a resident of the State of Indiana for purposes of the Indiana Franchise Act and the Indiana Deceptive Franchise Practices Act. When the Court considers the citizenship of a party for jurisdictional purposes, different considerations are made for corporations and limited liability companies. A corporation is a citizen of its state of incorporation and also the state of its principal place of business. *Westfield Ins. Co. v. Kuhns*, 2011 U.S. Dist. LEXIS 138262, at *3 (S.D. Ind. Nov. 30, 2011). On the other hand, the state of "incorporation" and principal place of business are inapposite for limited liability companies because "the citizenship of an LLC is the citizenship of each of its members." *Thomas v. Guardsmark, LLC*, 487 F.3d 531, 534 (7th Cir. 2007).

The Court acknowledges that "residence and citizenship are not synonyms." *Meyerson v. Harrah's East Chicago Casino*, 299 F.3d 616, 617 (7th Cir. 2002). However, when considering citizenship, courts look to a party's domicile, and "[d]omicile generally has two elements: (1) physical presence or residence in a state, and (2) an intent to remain in the state." *Transvision Techs. Holding, Inc. v. Knight*, No. 1:04-CV-2086 LJMTAB, 2005 WL 2246316, at *2 (S.D. Ind. Sept. 15, 2005); *see also Midwest Transit, Inc. v. Hicks*, 2003 U.S. App. LEXIS 21280, at *7 (7th

15

Cir. 2003) (same).  Thus, a party can be a resident of a state while not a citizen of that state, but a party cannot be a citizen of a state without first being a resident of that state.  It therefore follows that Highlands Ranch is a resident of the state where it is a citizen.

As pled in Highlands Counter-Claimants' Counter-claim and Third-party Complaint, Highlands Ranch is a limited liability company, and the members of Highlands Ranch are 7E Holdings[3] and Mr. and Ms. Smith (Filing No. 25-2 at 2), each of whom is a citizen of Colorado (Filing No. 25 at 15).  Therefore, Highlands Ranch is a citizen of Colorado, and it also is a resident of Colorado because it cannot be a citizen of Colorado without also being a resident of Colorado.

This determination is further supported by the fact that the actual operations of Highlands Ranch—operating a health spa—actually were conducted in the State of Colorado, and the agreement among the parties directed that the operations would be in Colorado.  Additionally, Highlands Counter-Claimants pled in their Counter-claim and Third-party Complaint that the operations of Highlands Ranch were in Colorado (Filing No. 25 at 15 ¶ 4).

Because Highlands Ranch is a resident of Colorado, and not Indiana, the Indiana Franchise Act and the Indiana Deceptive Franchise Practices Act do not apply to the franchise created by the parties' licensing and operating agreements.  Because these Acts do not apply to the franchise, Highlands Ranch and the Smiths are not entitled to the rights, obligations, and protections of the Acts.  Therefore, **Counts 2–5** of the Counter-claim and Third-party Complaint are **DISMISSED with prejudice**.

### b.   Count 6

7E Counter-Defendants and Nielsen argue that Count 6 (breach of contract) should be dismissed to the extent that there is a lack of privity between certain parties.  The breach of contract

---

[3] The managing member of 7E Holdings is Nielsen, who is a Colorado citizen (Filing No. 25-2 at 25; Filing No. 25 at 15), thus making 7E Holdings a citizen of Colorado.

claim concerns the licensing agreement and the operating agreement.  The parties to the licensing agreement are 7E Fit Spa Licensing and Highlands Ranch, as well as Mr. Smith and Ms. Smith who signed the agreement both "individually" and as "signatories on behalf of" Highlands Ranch (Filing No. 23-1 at 27).  The parties to the operating agreement are 7E Holdings and Highlands Ranch (Filing No. 23-2 at 25).  Highlands Counter-Claimants agree that these two contracts are between the above-named parties and assert that privity of contract therefore exists.  Based on the parties to the agreements and the privity arising therefrom, the Court **DENIES** the Motion to Dismiss **Count 6** regarding the licensing agreement between 7E Fit Spa Licensing, Highlands Ranch, and the Smiths, and the operating agreement between 7E Holdings and Highlands Ranch.  The breach of contract claim is otherwise **DISMISSED with prejudice** against the parties who are not parties to the licensing agreement or the operating agreement.

### c.    Counts 7 and 8

Next, 7E Counter-Defendants and Nielsen argue that Counts 7 and 8 (breach of covenant and implied covenant of good faith and fair dealing) should be dismissed because there is no such covenant or implied covenant under the facts of this case involving licensing and operating agreements.  They assert that some states imply a covenant of good faith into every contract.  However, Indiana is not one of those states.  Instead, they explain, "[i]t is well-known that Indiana does not recognize an implied good faith and fair dealing in contracts."  *Bob Nicholson Appliance v. Maytag Co.*, 883 F. Supp. 321, 327 (S.D. Ind. 1994).

> Indiana courts have recognized an implied covenant of good faith and fair dealing in contract law, but generally only in limited circumstances involving employment contracts and insurance contracts.  If the contract is ambiguous or expressly imposes such a duty on the parties, then the courts will impose such a duty.  Our Supreme Court has explained the courts' reluctance to extend this duty to other, unambiguous contracts:

> It is not the province of courts to require a party acting pursuant to such an unambiguous contract to be "reasonable," "fair," or show "good faith" cooperation. Such an assessment would go beyond the bounds of judicial duty and responsibility. It would be impossible for parties to rely on the written expressions of their duties and responsibilities. Further, it would place the court at the negotiation table with the parties.

*Allison v. Union Hosp., Inc.*, 883 N.E.2d 113, 123 (Ind. Ct. App. 2008) (internal citations omitted).

Highlands Counter-Claimants respond that Indiana does not have an absolute limitation to implying a duty of good faith and fair dealing only to employment and insurance contracts. They point to *Old Nat'l Bank v. Kelly*, 31 N.E.3d 522 (Ind. Ct. App. 2015). There, the Indiana Court of Appeals explained that "there is no absolute restriction to employment and insurance contracts," and courts may impose a duty of good faith and fair dealing where the contract is ambiguous and involves a fiduciary relationship or a contract of adhesion. *Id.* at 531.

Based on Indiana's reluctance to extend this duty to unambiguous non-insurance and non-employment contracts, the general limitation to employment and insurance contracts, and the lack of allegations in the pleadings that the contracts were ambiguous, the Court determines that claims for breach of covenant and implied covenant of good faith and fair dealing are not viable under the unambiguous licensing and operating agreements that were freely entered into by the parties. Therefore, the Court **DISMISSES with prejudice Counts 7 and 8**.

### d.      Counts 9 and 10

7E Counter-Defendants and Nielsen's only argument for dismissal of Counts 9 and 10 (unjust enrichment and promissory estoppel) is that express contracts exist that cover the matters in this litigation, which in turn foreclose any implied equitable claims such as unjust enrichment or promissory estoppel. In response, Highlands Counter-Claimants explain that unjust enrichment and promissory estoppel are available where no express contract exists, and further, the claims are pled in the alternative, which is permitted by the Federal Rules of Civil Procedure. They point to

18

Rule 8(d), which allows "a claim or defense alternatively," and "separate claims or defenses . . . regardless of consistency."

Because parties may plead claims in the alternative, and because Highlands Counter-Claimants have pled factual allegations sufficient to support claims for unjust enrichment and promissory estoppel, the Court **DENIES** the Motion to Dismiss regarding **Counts 9 and 10**.

### e. <u>Counts 11 and 12</u>

Count 11 is a claim for tortious interference with contract, and based on the parties' concessions, this claim is still disputed only against Nielsen.  Count 12 is a claim for tortious interference with a business relationship, and based on the parties' concessions, this claim is still disputed only against 7E Fit Spa Licensing and 7E Holdings.

Citing *Levee v. Beeching*, 7E Counter-Defendants and Nielsen argue that the elements of a claim for tortuous interference are: (1) the existence of a valid relationship; (2) the defendant's knowledge of the existence of the relationship; (3) the defendant's intentional interference with that relationship; (4) the absence of justification; and (5) damages resulting from defendant's wrongful interference with the relationship.  *Levee v. Beeching*, 729 N.E.2d 215, 222 –23 (Ind. Ct. App. 2000).  Furthermore, illegal conduct is an essential element of tortuous interference with a business relationship.  *Id.*  7E Counter-Defendants and Nielsen assert that no illegal conduct was alleged, the allegations describe a breach of contract, and there was justification for 7E Counter-Defendants and Nielsen's conduct because the agreements required that Highlands Ranch have no customers after termination of the agreements.

Highlands Counter-Claimants respond that each of the elements of the claims are sufficiently pled with adequate factual allegations.  The licensing and operating agreements created valid contracts and relationships.  Nielsen knew of the existence of the contracts and relationships

because he is a member or manager of Highlands Ranch, 7E Holdings, and 7E Fit Spa Licensing, and he signed the agreements. They also allege that Nielsen intentionally induced 7E Holdings and 7E Fit Spa Licensing to breach the contracts with Highlands Ranch, and there was no justification. Additionally, they suffered damage in their business income from the interference. They allege that there are factual allegations which support the elements of tortious interference with the business relationship between Highlands Ranch and its customers.

Regarding the illegal conduct element, Highlands Counter-Claimants assert that 7E Holdings and 7E Fit Spa Licensing wrongfully obtained Highlands Ranch's customer information through the 7E Fit Spa database and then misrepresented the status of Highlands Ranch to its customers. They also rely on the two Indiana Franchise Acts to assert illegal conduct. Because the Court has determined that the Franchise Acts do not apply, this argument is unavailing for Highlands Counter-Claimants. Concerning the obtainment of Highlands Ranch's customer information, under the licensing and operating agreements, the parties were contractually required to exchange information about the business operations, including information about Highlands Ranch's customer information, through the 7E Fit Spa database. Thus, there was no illegal conduct when 7E Holdings and 7E Fit Spa Licensing obtained Highlands Ranch's customer information through the 7E Fit Spa database. With no illegal conduct alleged to support a claim for tortious interference with a business relationship, the Court **DISMISSES Count 12 without prejudice** because it may be possible that the claim is viable under some set of facts that have not been alleged.

Concerning Count 11 for a claim of tortious interference with contract against Nielsen, after reviewing the Counter-claim and Third-party Complaint, the Court determines that the factual allegations adequately support this claim against Nielsen to survive a motion to dismiss based on

his actions and his involvement as a member or manager of Highlands Ranch, 7E Holdings, and 7E Fit Spa Licensing.  Therefore, the Court **DENIES** the Motion to Dismiss **Count 11** for tortious interference with contract against Nielsen.

### f.       Count 13

Count 13 is a claim for breach of fiduciary duty, and based on the parties' concessions, this claim is still disputed only against 7E Holdings and Nielsen. 7E Counter-Defendants and Nielsen focus their argument on the licensing agreement and 7E Fit Spa Licensing; however, Highlands Counter-Claimants concede that this claim is not viable as to 7E Fit Spa Licensing.

In light of the relationships among 7E Holdings, Nielsen, Highlands Ranch, Mr. Smith, and Ms. Smith as members of the limited liability companies, the case law concerning fiduciary duties of an LLC's members,[4] and the allegations in the Counter-claim and Third-party Complaint, the Court determines that Count 13 is sufficiently pled to survive the Motion to Dismiss.  Thus, the Court **DENIES** the Motion to Dismiss **Count 13** for breach of fiduciary duty against 7E Holdings and Nielsen.

### g.       Counts 14–16

Finally, 7E Counter-Defendants and Nielsen argue that the claims for fraud, fraud in the inducement, and constructive fraud must be dismissed because fraud claims cannot be based on a future promise, "trade talk," or "puffery," and the allegations fail to meet the heightened pleading standards for fraud claims under Rule 9(b).  They additionally assert that the constructive fraud claim must be dismissed because there are no fiduciary relationships to support such a claim.

In response, Highlands Counter-Claimants acknowledge that "Indiana adheres to the common law rule that mere statements of opinion or promises of future action cannot constitute

---

[4] *See Purcell v. S. Hills Invs., LLC*, 847 N.E.2d 991, 996 (Ind. Ct. App. 2006) ("Indiana LLCs impose a common law fiduciary duty on their officers and members in the absence of contrary provisions in the LLC operating agreements").

material misrepresentations capable of supporting an action in fraud." *Scott v. Boder, Inc.*, 571 N.E.2d 313, 320 (Ind. Ct. App. 1991). However, where representations are made concerning past or existing fact that are not merely opinion or promises of future action, a party may be able to recover under a fraud claim. *Id.* at 320–21.

Highlands Counter-Claimants explain that Nielsen's representations as to the profitability of a 7E Fit Spa location were based on the then-existing facts regarding the per month income and per month net profit of other 7E Fit Spa locations, and Nielsen knew these representations were false. The statements were not just future promises regarding potential business income. Additionally, the allegations include the representation that 7E Fit Spa Licensing was the owner of the 7E Fit Spa trademarks when in reality it was not. 7E LLC was the owner of the trademarks. The factual allegations support the claims for fraud.

Concerning the heightened pleading standards for fraud claims under Rule 9(b), Highlands Counter-Claimants assert that their allegations provide the necessary specificity. They identify the person who made the misrepresentations and when they were made: Nielsen in the fall of 2013. The place and content of the misrepresentations were alleged: the Smiths were introduced to Nielsen in Colorado where he misrepresented 7E Fit Spa profits and income and the ownership of 7E Fit Spa trademarks.

Regarding the constructive fraud claim, Highlands Counter-Claimants point back to their argument regarding the fiduciary duties owed by 7E Holdings and Nielsen and assert that the fiduciary relationships of the limited liability company members support the claim for constructive fraud.

After reviewing all the factual allegations in the Counter-claim and Third-party Complaint and after considering the parties' arguments regarding the fraud claims, the Court finds that

Highlands Counter-Claimants' argument is well taken, and the pleadings provide the necessary level of specificity to support the fraud claims at the dismissal stage of the litigation.  Based on the pleadings and the parties' concessions, the Court **DENIES** the Motion to Dismiss **Counts 14 and 15** against 7E Fit Spa Licensing, 7E Holdings, and Nielsen, and **DENIES** the Motion to Dismiss **Count 16** against 7E Holdings and Nielsen.

**B.**     **Motion for Leave to File a Sur-Reply**

Next, the Court considers the Motion for Leave to File a Sur-Reply (Filing No. 52) filed by Highlands Counter-Claimants after 7E Counter-Defendants and Nielsen filed their reply brief in support of their Motion to Dismiss.

Without attaching the proposed sur-reply brief to the Motion for Leave to File a Sur-Reply, Highlands Counter-Claimants ask the Court for permission to file a sur-reply because 7E Counter-Defendants and Nielsen allegedly raised new legal arguments in their Reply Brief in support of the Motion to Dismiss.  They then assert that *Wright-Moore Corp. v. Ricoh Corp.*, 794 F. Supp. 844 (N.D. Ind. 1991), which was relied upon by 7E Counter-Defendants and Nielsen in their Reply Brief, is not binding authority in this Court, and 7E Counter-Defendants and Nielsen mistakenly misled the Court regarding that Court's holding about the Indiana Franchise Act.  Highlands Counter-Claimants then briefly explain their interpretation of the *Wright-Moore Corp.* decision.

After careful review of all the briefing, the Court concludes that no new legal arguments were raised for the first time in 7E Counter-Defendants and Nielsen's Reply Brief in support of the Motion to Dismiss.  Rather, 7E Counter-Defendants and Nielsen cited to the *Wright-Moore Corp.* decision in order to reply to Highlands Counter-Claimants' argument in their Response Brief that their franchise was a resident of Indiana.  Thus, 7E Counter-Defendants and Nielsen were simply replying to Highlands Counter-Claimants' response argument, and they cannot be faulted

for relying on case law that their opponents did not find first.  The Court is fully aware of the non-binding effect of the *Wright-Moore Corp.* decision from the Northern District of Indiana and is capable of analyzing that case and giving it appropriate considering without the additional filing of a sur-reply brief.  Finally, the Court also notes that it did not use the *Wright-Moore Corp.* decision in resolving the Motion to Dismiss.  For these reasons, the Court **DENIES** the Motion for Leave to File a Sur-Reply (Filing No. 52).

**C.**   **Motion to Strike**

Lastly, after Highlands Counter-Claimants filed their Reply Brief in support of their Motion for Leave to File a Sur-Reply, 7E Counter-Defendants and Nielsen filed a Motion to Strike Portions of Reply in Support of Motion for Leave to File Sur-Reply.  Because the Court denies the Motion for Leave to File a Sur-Reply, the Court **DENIES as moot** the Motion to Strike Portions of Reply in Support of Motion for Leave to File Sur-Reply (Filing No. 66).

## IV.   CONCLUSION

For the foregoing reasons, 7E Counter-Defendants' and Nielsen's Motion to Dismiss (Filing No. 28) is **GRANTED in part and DENIED in part**.  Specifically, the following determinations are made on Highlands Counter-Claimants' sixteen claims:

(1) Count One: Declaratory judgment under the Lanham Act and other trademark laws. The Motion to Dismiss is **DENIED** as to this claim.

(2) Count Two: Declaratory judgment under Indiana's franchise laws. The Motion to Dismiss is **GRANTED** and this claim is **DISMISSED with prejudice** against 7E Counter-Defendants and Nielsen.

(3) Count Three: Declaratory judgment under Indiana's franchise laws. The Motion to Dismiss is **GRANTED** and this claim is **DISMISSED with prejudice** against 7E Counter-Defendants and Nielsen.

(4) Count Four: Equitable relief under the Indiana Franchise Act. The Motion to Dismiss is **GRANTED** and this claim is **DISMISSED with prejudice** against 7E Counter-Defendants and Nielsen.

(5) Count Five: Equitable relief under the Indiana Deceptive Franchise Practices Act. The Motion to Dismiss is **GRANTED** and this claim is **DISMISSED with prejudice** against 7E Counter-Defendants and Nielsen.

(6) Count Six: Breach of contract. The Motion to Dismiss is **DENIED** as to this claim against 7E Fit Spa Licensing under the licensing agreement and against 7E Holdings under the operating agreement. This claim is **DISMISSED with prejudice** against 7E LLC and Nielsen.

(7) Count Seven: Breach of covenant of good faith and fair dealing. The Motion to Dismiss is **GRANTED** and this claim is **DISMISSED with prejudice** against 7E Counter-Defendants and Nielsen.

(8) Count Eight: Breach of implied covenant of good faith and fair dealing. The Motion to Dismiss is **GRANTED** and this claim is **DISMISSED with prejudice** against 7E Counter-Defendants and Nielsen.

(9) Count Nine: Unjust enrichment. The Motion to Dismiss is **DENIED** as to this claim against 7E Fit Spa Licensing and 7E Holdings. This claim is **DISMISSED without prejudice** against 7E LLC and Nielsen.

(10) Count Ten: Promissory estoppel. The Motion to Dismiss is **DENIED** as to this claim against 7E Fit Spa Licensing and 7E Holdings. This claim is **DISMISSED without prejudice** against 7E LLC and Nielsen.

(11) Count Eleven: Tortious interference with contract. The Motion to Dismiss is **DENIED** as to this claim against Nielsen. This claim is **DISMISSED without prejudice** against 7E LLC, 7E Fit Spa Licensing, and 7E Holdings.

(12) Count Twelve: Tortious interference with business relations. The Motion to Dismiss is **GRANTED** and this claim is **DISMISSED without prejudice** against 7E Counter-Defendants and Nielsen.

(13) Count Thirteen: Breach of fiduciary duty. The Motion to Dismiss is **DENIED** as to this claim against 7E Holdings and Nielsen. This claim is **DISMISSED without prejudice** against 7E LLC and 7E Fit Spa Licensing.

(14) Count Fourteen:  Fraud. The Motion to Dismiss is **DENIED** as to this claim against 7E Fit Spa Licensing, 7E Holdings, and Nielsen. This claim is **DISMISSED without prejudice** against 7E LLC.

(15) Count Fifteen: Fraud in the inducement. The Motion to Dismiss is **DENIED** as to this claim against 7E Fit Spa Licensing, 7E Holdings, and Nielsen. This claim is **DISMISSED without prejudice** against 7E LLC.

(16) Count Sixteen: Constructive fraud. The Motion to Dismiss is **DENIED** as to this claim against 7E Holdings and Nielsen. This claim is **DISMISSED without prejudice** against 7E LLC and 7E Fit Spa Licensing.

Concerning Counter-Claimant Spectrum MedSpa's sixteen claims, each of the claims that is dismissed with prejudice are also dismissed with prejudice for Spectrum MedSpa. Each of the

claims that is dismissed without prejudice or survives the Motion to Dismiss are dismissed without prejudice for Spectrum MedSpa. However, Spectrum MedSpa's claim for declaratory judgment under the Lanham Act and other trademark laws under Count 1 also survives the Motion to Dismiss.

As to the related motions, Highlands Counter-Claimants' Motion for Leave to File Sur-Reply (Filing No. 52) is **DENIED**, and 7E Counter-Defendants' and Nielsen's Motion to Strike (Filing No. 66) is **DENIED as moot**.

**SO ORDERED.**

Date: 9/13/2016

_____
TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

P. Adam Davis
DAVIS & SARBINOFF LLC
efiling@d-slaw.com

Gary P. Price
BENESCH, FRIEDLANDER, COPLAN & ARONOFF, LLP
gprice@beneschlaw.com

Patrick F.X. Fitzpatrick
BENESCH, FRIEDLANDER, COPLAN & ARONOFF, LLP
pfitzpatrick@beneschlaw.com

Peter S. French
BENESCH, FRIEDLANDER, COPLAN & ARONOFF, LLP
pfrench@beneschlaw.com

Stephanie V. McGowan
BENESCH, FRIEDLANDER, COPLAN & ARONOFF, LLP
smcgowan@beneschlaw.com